UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACEY MOSELEY,

                Plaintiff,        Civil Action No. 16-13588
                                    Honorable Paul D. Borman
                                    Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 19]

Plaintiff Tracey Moseley ("Moseley") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [14, 19], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.     RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Moseley is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [19] be **DENIED**, Moseley's Motion for Summary Judgment [14] be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

## II.   REPORT

### A.   Procedural History

On July 12, 2013, Moseley filed an application for DIB, alleging a disability onset date of August 30, 2011.[1] (Tr. 146-152). This application was denied initially on September 27, 2013. (Tr. 107-110). Moseley filed a timely request for an administrative hearing, which was held on November 12, 2014, before ALJ Patricia S. McKay. (Tr. 31-69). Moseley, who was represented by attorney Kiel Roeschke, testified at the hearing, as did vocational expert Judith Findora. (*Id.*). On March 27, 2015, the ALJ issued a written decision finding that Moseley is not disabled under the Act. (Tr. 8-29). On August 29, 2016, the Appeals Council denied review. (Tr. 1-6). Moseley timely filed for judicial review of the final decision on October 7, 2016. (Doc. #1).

### B.   Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:   If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:   If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

---

[1] Moseley's date last insured is June 30, 2017. (Tr. 11). Thus, she must establish disability on or before that date in order to be entitled to DIB.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.   Background**

*1.   Moseley's Reports and Testimony*

At the time of the administrative hearing, Moseley was 47 years old, and at 5'3" tall, weighed 218 pounds. (Tr. 49). She was living in a house with her adult daughter and her husband, who has "permanent nerve damage" and receives disability benefits. (Tr. 49-50, 206). Moseley completed high school and unspecified vocational training in the medical field. (Tr. 50, 198). In addition, Mosley indicated she was taking classes for medical billing for a period of time after her onset date, but dropped out of them. (Tr. 50-51). Previously, she worked as a medical office clerk and as a hospital unit clerk; however, she stopped working in August 2011, due to undergoing treatment for thyroid cancer. (Tr. 51, 52-53).

Moseley alleges disability as a result of multiple spinal surgeries, loss of urinary/bowel control, narcolepsy, loss of coordination in the lower extremities, high blood pressure,

gastroesophageal reflux disease, depression, and difficulty concentrating. (Tr. 190). With respect to her back, Moseley testified that she has constant pain, varying in intensity, through her middle and lower back. (Tr. 38). In addition to back pain, she also experiences numbness and tingling in her arms and legs, along with intermittent pain. (Tr. 37-38, 40). She takes medications including Effexor, Neurontin, Ultram, Naprosyn, Visceral, and Ativan, though they make her "drowsy a lot." (Tr. 41). Moseley also must wear "urinary pads" daily, and cannot "hold [her] urine until [she is] able to actually make it to the bathroom." (Tr. 42).

In terms of her daily activities, Moseley has difficulty with some aspects of personal care. (Tr. 210). At the hearing, she testified that she needs help with putting on clothing and has difficulty using the restroom. (Tr. 46, 210). Moseley no longer drives, and is limited to preparing microwave meals. (Tr. 45, 210). She testified that she cannot stand for more than ten minutes at a time, cannot walk more than "almost . . . half a block" using her cane, (Tr. 38-39), and lays down "most of the day." (Tr. 41).

2. *Medical Evidence*

The Court has thoroughly reviewed Moseley's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

3. *Vocational Expert's Testimony*

Judith Findora testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 57-64). The ALJ asked the VE to imagine a claimant of Moseley's age, education, and work experience who can perform sedentary exertional work, with the following additional limitations: can only occasionally climb stairs, crouch, crawl, kneel, stoop, or bend; cannot climb ladders, ropes, or scaffolds; can have no exposure to hazards such as dangerous machinery or

unprotected heights; is able to use her assistive device (cane); has flexibility to change positions; requires a sit/stand option; can frequently use her upper extremities for fingering and grasping, fine fingering and grasping and gross manipulation; and requires a self-paced work environment. (Tr. 59-64). The VE testified that the hypothetical individual would not be capable of performing Moseley's past work as a billing clerk or as a hospital unit clerk. (*Id.*). However, the VE testified that the hypothetical individual would be capable of working in the representative positions of administrative support clerk (125,000 jobs nationally), information clerk (83,000 jobs), and hand packer (68,000 jobs). (*Id.*).

### D. The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Moseley did not engage in substantial gainful activity since August 30, 2011 (the alleged onset date). (Tr. 13). At Step Two, she found that Moseley has the severe impairments of multilevel degenerative disc disease and disc herniation with a history of lumbar radiculopathy, status post discectomy and laminectomy of the thoracic spine; left ulnar neuropathy; and left cervical radicular symptoms. (*Id.*). At Step Three, she found that Moseley's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 17).

The ALJ then found that Moseley retains the residual functional capacity ("RFC") to perform sedentary work, with the following additional limitations: occasional climbing of stairs, crouching, crawling, kneeling and stooping/bending; avoiding workplace hazards, such as moving machinery, unprotected heights, and climbing of ladders; use of an assistive device to ambulate; having the opportunity to alternate between sitting and standing; frequent use of the upper extremities for fingering and grasping; and limited to self-paced/avoiding a production-rate work environment. (*Id.*).

At Step Four, the ALJ determined that Moseley is unable to perform any of her past relevant work. (Tr. 23). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Moseley is capable of performing a significant number of jobs that exist in the national economy. (Tr. 24). As a result, the ALJ found that Moseley is not disabled under the Act. (Tr. 25).

E. **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.     Analysis**

In her motion for summary judgment, Moseley argues that the ALJ failed to obtain an updated medical opinion on the issue of whether or not she medically equals listing 1.04A.[2]

---

[2] Because the Court is recommending remand on these grounds, it need not address the merits of Moseley's additional arguments: that the ALJ's finding at Step Three that she does not meet or medically equal Listing 1.04A is not supported by substantial evidence and that the ALJ failed to create an accurate RFC assessment. Nonetheless, if on remand after obtaining an updated medical opinion, the ALJ determines that Moseley's impairments do not meet or medically equal Listing 1.04A's requirements, the ALJ should properly consider all of Moseley's severe and non-severe impairments in her RFC analysis. In particular, the ALJ should consider and discuss any

(Doc. #14 at 21-23). For the reasons set forth below, the Court finds merit to Moseley's argument.

   1.   *The ALJ's Step Three Analysis*

At Step Two, the ALJ found, in relevant part, that Moseley has the severe impairments of multilevel degenerative disc disease and disc herniation with a history of lumbar radiculopathy, status post discectomy and laminectomy of the thoracic spine; left ulnar neuropathy; and left cervical radicular symptoms. (Tr. 13). Then, at Step Three, with respect to these impairments the ALJ said only:

> The undersigned considered the claimant's degenerative disc disease of the lumbar spine under listing section 1.04 (disorders of the spine). However, the record does not show the requisite evidence of root compression, spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication, as described in this section.

(Tr. 17). In order for Moseley to meet the criteria of Listing 1.04A – the only portion of Listing 1.04 that Moseley claims the ALJ erroneously evaluated (Doc. #14 at 17-20) – she must show that she has a disorder of the spine (i.e. spinal arachnoiditis, spinal stenosis, or degenerative disc disease) with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.04A. It is well settled that to "meet" a listing, a claimant's impairments must satisfy each and every element of the listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of

---

functional limitations resulting from Moseley's neurogenic bladder (incontinence), which is well documented in the record. (Tr. 209, 380, 556, 563, 584, 740).

8

those criteria, no matter how severely, does not qualify.") (emphasis in original); *Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing.").

In this case, the ALJ failed to articulate what listing criteria Moseley did not meet, and it is not clear to the Court that the ALJ's determination is supported by substantial evidence. Although the ALJ states that "the record does not show the requisite evidence of root compression," (Tr. 17), there seems to be ample evidence of spinal cord and thecal sac compression (Tr. 343, 480, 485, 487), and the Commissioner does not dispute that Mosely meets this aspect of the listing. (Doc. #19 at 9). There is also evidence of neuro-anatomic distribution of pain (Tr. 486, 568, 586), limitation of motion of the spine (Tr. 608, 609, 659), motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss (Tr. 350, 486, 740, 748-49), and a positive straight leg raise test. (Tr. 612). The Commissioner contends that remand is not warranted because Moseley did not demonstrate positive straight leg tests in both the sitting *and* supine positions. (Doc. #19 at 9-10). While the ALJ sheds no light on whether this was the basis for her decision at Step Three, it does cast doubt on whether Moseley can meet the requirements of Listing 1.04A. *Palaghe v. Comm'r of Soc. Sec.*, No. 15-11920, 2016 WL 1714733, at *14 (E.D. Mich. Apr. 28, 2016) ("Lack of evidence that the straight-leg test was positive in both the sitting and supine position is itself sufficient to preclude a claimant from meeting Listing 1.04A.").

    2.    *Medical Equivalency*

Even if the Commissioner is correct that Moseley cannot meet all of Listing 1.04A's requirements, this does not end the Step Three analysis because Moseley would still be

presumptively entitled to benefits if she could show that her impairments are medically equivalent to the Listing's requirements. "When a claimant has a listed impairment but does not meet the criteria, an ALJ can find that the impairment is 'medically equivalent' to the listing if the claimant has 'other findings related to [the] impairment that are at least of equal medical significance to the required criteria.'" *Thomas v. Comm'r of Soc. Sec.*, No. 12-14758, 2014 WL 688197, at *8 (E.D. Mich. Feb. 21, 2014) (quoting 20 C.F.R. § 416.926(a)). Given how closely Moseley's symptoms match the listing requirements (except for the missing positive straight leg raise test in the sitting position), and critically, given the significant additional evidence relating to Moseley's spinal impairments, the record leaves open at least the possibility that Moseley medically equals Listing 1.04A's requirements.

Social Security regulations mandate, and the Commissioner concedes (Doc. #19 at 9), that "the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge . . . *must* be received into the record as expert opinion evidence and given appropriate weight." Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (Jul. 2, 1996) (emphasis added); *see also Retka v. Comm'r of Soc. Sec.*, 70 F.3d 1272 (6th Cir. 1995) (noting that "[g]enerally, the opinion of a medical expert is required before a determination of medical equivalence is made."); *Fowler v. Comm'r of Soc. Sec.*, No. 12-12637, 2013 WL 5372883, at *13 (E.D. Mich. Sept. 25, 2013) (noting that "[t]he great weight of authority holds that a record lacking any medical advisor opinion on equivalency requires a remand," and collecting cases). This requirement will be satisfied if the record contains Disability Determination and Transmittal Forms ("DDTs"), Psychiatric Review Technique Forms, or "various other documents on which medical and psychological consultants may record their findings" that are signed by a state agency medical consultant. Soc. Sec. Rul. 96-6p, 1996

WL 374180, at *3.

Here, there are two signed DDTs. The first, dated September 27, 2013, and signed by a Dr. Choi (Tr. 78-83), does not consider whether Moseley met or medically equaled Listing 1.04A, and is therefore insufficient. *See Truitt v. Comm'r of Soc. Sec.*, No. CV 16-10033, 2017 WL 382309, at *4 (E.D. Mich. Jan. 9, 2017), *report and recommendation adopted*, No. 16-10033, 2017 WL 372013 (E.D. Mich. Jan. 26, 2017) (finding remand is warranted and an updated medical opinion required where the only medical expert opinion rendered failed to consider the appropriate listing). The second, dated November 19, 2012, and signed by a Dr. Kuiper, does explicitly consider Listing 1.04A, and ultimately concludes Moseley is not disabled. The problem with this opinion is that it is from Moseley's previous application for disability. (Tr. 21; Doc. #14 at 22). As a result, Dr. Kuiper only had before him, and only considered, some of the record evidence – the record up until November 19, 2012 – and did not consider the relevant evidence contained in the rest of the record from November 19, 2012, through September 16, 2014. As discussed in the next section, without an updated medical opinion encompassing all the available evidence, the ALJ was unable to properly consider whether Moseley's impairments medically equaled Listing 1.04A.

        3.      *The ALJ Was Required to Obtain an Updated Medical Opinion as to Whether Moseley's Impairments Medically Equaled Listing 1.04A*

Social Security Ruling 96–6p also governs the need for updated medical expert opinions. It requires an update when either "(1) there is evidence of symptoms, signs and findings that suggest to the ALJ or Appeals Council that the applicant's condition may be equivalent to the listings; or (2) when additional medical evidence is received that 'in the opinion of the [ALJ] . . . may change the State agency medical or psychological consultant's finding' that the impairment does not equal the listings." *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 830 (6th Cir. 2009)

11

(quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *4); *see also*, *Roberts v. Colvin*, No. 14-13194, 2015 WL 5432388, at *4 (E.D. Mich. July 23, 2015) ("an ALJ must seek an updated opinion on the issue of medical equivalence where medical evidence is received that may change a consultant's finding that an impairment is not equivalent to a listing.") (citing *Courter v. Comm'r of Soc. Sec.*, 479 Fed. Appx. 713, 723 (6th Cir. 2012)).

Initially, the Commissioner argues that the period considered by Dr. Kuiper "almost entirely overlapped with the period the ALJ was reviewing." (Doc. #19 at 11). This argument lacks merit as it ignores over a year and a half of pertinent records, which are discussed below.[3] Moreover, the ALJ's decision does not articulate whether "evidence . . . suggest[s] to [her] that the applicant's condition may be equivalent to the listings" or not, nor whether in her opinion the significant portion of the record unconsidered by Dr. Kuiper might have "change[d] [his] finding that the impairment does not equal the listings." 314 F. App'x at 830. The Commissioner contends (although it is not articulated in the ALJ's decision) that the ALJ must *not* have been "of the opinion that the medical evidence [contained in the record after November 16, 2012] suggested any sort of equivalency finding," or alternately that "the ALJ did not receive any additional evidence that, in [her] opinion, might change the previous [equivalency] opinions of the state agency medical consultants in this case." (Doc. #19 at 12). But even assuming one of these two statements correctly channels the ALJ's thinking, and considering both of the prongs enunciated in *Kelly* as the Commissioner does, this Court still finds the ALJ's opinion is not supported by substantial evidence and that remand is required.

Dr. Kuiper's report evaluated Moseley's records only through November 19, 2012. (Tr.

---

[3] The Court also notes the Commissioner's admission in her brief that, "[t]he question before the ALJ was whether Plaintiff was disabled between her alleged onset date, August 30, 2011 (Tr. 71), and the date of the decision, March 27, 2015." (Doc. #19 at 3).

21). This leaves a significant volume of substantive medical records that were before the ALJ, yet unconsidered by a medical expert. Within these records are numerous reports from Moseley's treating physician, Dr. Seidel, regarding the *worsening* of her spinal conditions. For example, on July 16, 2013, Dr. Seidel indicated that "[Moseley's] pain has worsened," she has "clonus at the ankles," and she "needs almost immediate access to a bathroom." (Tr. 552). He noted that she "is never truly continent of bowel and bladder," "cannot tandem walk," and has "[l]umbar spinal stenosis with lateral recess involvement of L4 and L5 bilaterally." (*Id.*). Further, in a "Lumbar Spine RFC" form filled out by Dr. Seidel on July 19, 2013, he indicated Moseley has "constant thoracic pain[,] worse with [sitting/standing]" (Tr. 659), has had "reflex changes" (Tr. 660), and has "reduced motion [in the] lumbar spine." (Tr. 659).

Also within the records unviewed by Dr. Kuiper is a consultative examination report from September 13, 2013, by Dr. Jose Mari G. Jurado. It is in Dr. Jurado's report that Moseley demonstrated a definitive positive straight leg test in the supine position (Tr. 608, 612), and her gait was observed to be "slow [and] shaky with pain." (Tr. 608). Dr. Jurado also indicated Moseley has "discordant perception head-to-toes, including vibration, equivocal to decreased," and has a positive "valsalva maneuver" in her "thoracic and lumbar spine" with "possible myelopathic issues." (Tr. 607-608). He also stated Moseley's range of motion in her lumbar spine is "limited with pain." (*Id.*). Regarding neuropathy in Moseley's arms, an Electromyography test taken March 26, 2014, indicated "abnormal bilateral upper extremity electrodiagnostic examination." (Tr. 745).

In an even more recent examination, on July 31, 2014, Dr. Seidel found Moseley has more frequent episodes of pain, "inability to bend at the waist," and that "she is relatively spastic in wide [base] when standing and walking." (Tr. 740). He also found she has significant loss of

13

sensation— "40% decreased sensation [] in the ulnar nerve distribution in the left arm and 30% reduced sensation [] in the C6 nerve root distribution in the left arm," as well as "altered sensation from thoracic area on down about 30% loss of sensation." (*Id*.).

These are just some of the many pieces of pertinent medical evidence that Dr. Kuiper was unable to consider in his November 2012 report. Considering the above, under either prong put forth in Soc. Sec. Rul. 96-6p, the ALJ's decision not to seek an updated medical opinion is not supported by substantial evidence. Under the first prong, there appears to be "evidence of symptoms, signs and findings" that should "suggest to the ALJ . . . that the applicant's condition may be equivalent to the listings." Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *4. And, under the second prong, there appears to be "additional medical evidence" in the record that "may change the State agency medical . . . consultant's finding that the impairment does not equal the listings." (*Id*.). In sum, the issue of whether Moseley's impairments medically equal Listing 1.04A can only be properly evaluated by the ALJ in the first instance after a proper updated medical opinion has been obtained. Accordingly, remand is warranted.

In making this recommendation, the Court is cognizant that

> [t]here will always be a gap between the time the agency experts review the record and give their opinion with respect to the Listing and the time the hearing decision is issued. Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand.

314 F. App'x at 831 (internal citation omitted). In this case, however, the ALJ relied on a dated expert opinion from Moseley's previous application for disability that considered only a portion of the relevant evidence, and the unconsidered portion of the record reflects a "clear showing that the new evidence renders the prior opinion untenable." While the above evidence may ultimately not change the outcome of this case, it is at least sufficient to require a more full and explicit consideration by an appropriate medical expert, whose opinion may then be evaluated

14

and used by the ALJ in deciding whether Moseley meets or medically equals Listing 1.04A. Accordingly, the case should be remanded so that an updated medical expert opinion can be obtained.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment [19] be **DENIED**, Moseley's Motion for Summary Judgment [14] be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

Dated: November 7, 2017         s/David R. Grand  
Ann Arbor, Michigan         DAVID R. GRAND  
       United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th

Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 7, 2017.

<pre>
                                    s/Eddrey O. Butts
                                    EDDREY O. BUTTS
                                    Case Manager
</pre>